UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

Disability Rights Wisconsin, Inc.,

    Plaintiff,

                                          Case No: 06 CV 0813

v.

Walworth County Board of Supervisors,

    Defendant.
_____

## BRIEF OPPOSING MOTION TO DISMISS
_____

### BACKGROUND

In lieu of answering the First Amended Complaint filed by Disability Rights Wisconsin, Inc. ("DRW"), the Walworth County Board of Supervisors ("Board") filed a Motion to Dismiss the complaint under F.R.Civ.P. 12(b)(6). The Board argues DRW's complaint should be dismissed for three reasons: DRW lacks standing to bring the claim in a representative capacity; DRW has not established appropriate class action claims under Rule 23; and DRW has failed to exhaust administrative remedies under the Individuals with Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* (Mem. in Supp. of Def. Mot. to Dismiss,1). Upon review of applicable statutory and case law, all of the Board's reasons to dismiss DRW's complaint fail. Thus, the Board's motion should be denied.

**ARGUMENT**

I.  **Since Disability Rights Wisconsin has Alleged Sufficient Facts to Maintain this Suit, the Board's Motion to Dismiss under Rule 12(b)(6) should be Denied.**

When ruling on a motion to dismiss under Rule 12(b)(6), a court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Miller v. Vesta, Inc.,* 946 F.Supp. 697, 701 (E.D. Wis. 1996) (quoting *Gibson v. City of Chicago,* 910 F.2d 1510, 1520-21 (7th Cir. 1990). A motion to dismiss should be granted only if it is clear beyond a doubt that no facts would support plaintiff's claim for relief. *Id.* (quoting *Palda v. Gen. Dynamics Corp.,* 47 F.3d 872, 874 (7th Cir. 1995). Furthermore, "' [t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Listenbee v. City of Milwaukee,* 753 F.Supp. 780, 781 (E.D. Wis. 1990) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). When this standard is applied to all three of the Board's stated reasons to dismiss DRW's claim, it should be clear to this court that the motion should be denied.[1]

II. **The Decision to Fund Construction of a New, Larger Lakeland School Discriminates Against Students with Disabilities in Walworth County because of their Disabilities.**

    A. **The integration mandate under Title II of the ADA requires people with disabilities to be treated in the least restrictive environment.**

Title II of the Americans with Disabilities Act (ADA) prohibits discrimination against people with disabilities by any public entity. Under the ADA, discrimination

---

[1] For this reason, this brief does not contain a separate Statement of Facts, as the First Amended Complaint serves as such a statement.

against a qualified individual with a disability results when that individual is excluded from participation in a program or denied a benefit or service on the basis of that disability. 42 U.S.C. § 12132. A qualified individual with a disability is one who "with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Children with disabilities who qualify for special education services such as those in Walworth County are qualified individuals under Title II of the ADA. *S.D. ex rel. K.M. v. Hyde Park Cent. Sch. Dist.,* 381 F.Supp.2d 343, 358 (S.D.N.Y. 2005) (recognizing that a student who "qualifies as a student with a disability under IDEA . . . is considered an individual with a disability for purposes of Section 504 and Title II.").

Under the ADA, a public entity includes "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State . . . or local government." 42 U.S.C. § 12131(1)(A), (B). The defendant Board is a local government which controls the Walworth County Children with Disabilities Education Board ("WCCDEB") which, in turn, operates Lakeland School. Thus, the Board is a public entity under Title II of the ADA. *S.D. ex rel. K.M.,* 381 F.Supp.2d at 358, n.14 (noting that because it receives federal funding, "there is no dispute" that the school district in that case was a public entity subject to Title II).

Pursuant to the regulations implementing Title II, the "integration mandate" requires public entities to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). The most integrated setting is defined as the one which allows

3

individuals with disabilities to interact with nondisabled individuals to the fullest extent possible. *Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581, 593 (1999); *Radaszewski v. Maram,* 383 F.3d 599, 607 (7th Cir. 2004) (both quoting 28 C.F.R. § pt. 35, App. A, p. 450). In order to comply with Title II, students with disabilities in Walworth County must be educated in the most integrated setting and must be allowed to interact with their nondisabled peers to the fullest extent possible.

### B. Unjustified social isolation of people with disabilities violates the integration mandate under Title II and thus constitutes discrimination on the basis of disability.

The Supreme Court determined that "unjustified institutional isolation" constitutes discrimination under Title II of the ADA. *Olmstead, supra.* In *Olmstead,* individuals with disabilities who received medical care from the State challenged the decision to continue treating them in an institution rather than a community-based program. *Id.* The Court held that placement in an institution rather than a community program constituted disability-based discrimination under Title II if three factors were met. *Id.* at 587. The three *Olmstead* factors included: when the State's treatment professionals decided community placement was appropriate, the individual receiving treatment does not oppose a less restrictive setting, and the placement can reasonably be accommodated considering the State's resources. *Id.*

Although no court has yet applied the *Olmstead* holding in a case that involved a school that segregated students with disabilities from nondisabled students, the justifications expressed in *Olmstead* make it clear that the holding is equally applicable in a segregated school case. The *Olmstead* court acknowledged that recognizing unjustified

4

Case 2:06-cv-00813-RTR    Filed 09/14/06    Page 4 of 20    Document 12

social isolation of people with disabilities as a form of discrimination exhibits two important principles. *Id.* at 600. "First, institutional placement of persons who can handle and benefit from community settings perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life." *Id.* at 600-01 (citing *Allen v. Wright,* 468 U.S. 737, 755 (1984); *Los Angeles Dept. of Water and Power v. Manhart,* 435 U.S. 702, 707, n. 13 (1978)). Additionally, "confinement in an institution severely diminishes the everyday life activities of individuals, including . . . social contacts . . . educational advancement, and cultural enrichment." *Id.* at 601.

Isolating students with disabilities from their nondisabled peers by educating them at Lakeland school at an inordinately high rate when compared with all other school districts in the state of Wisconsin similarly implicates *Olmstead's* two fundamental principles. In turn, the Board's decision to fund the construction of a larger Lakeland school which will result in isolating an even higher percentage of students with disabilities implicates these principles to a higher degree. Indeed, rather than moving towards increasing the integration of children with disabilities in Walworth County, the Board's decision to increase the size of the new Lakeland School, is a decision to increase the segregation of more children with disabilities in the county.

Furthermore, one recent district court decision discussed the fact that unjustified social isolation of a student with a disability in a public school setting may constitute actionable discrimination. *S.D. ex rel. K.M.,* 381 F.Supp.2d at 360 (citing *Olmstead*, 527 U.S. at 581). In that case, parents claimed that the school district's failure to respond to disability-based peer harassment constituted discrimination in violation of Title II and Section 504 of the Rehabilitative Act. *Id.* at 346. The court refused to grant the school

5

district's motion for summary judgment. *Id.* at 347. The court held that under *Olmstead,* the district's decision to isolate the student by separating him from his peers during the lunch hour may constitute discrimination. *Id.* at 360. According to the court,

> Admittedly, eating lunch alone is not the same thing as institutionalization. However, the comments of the *Olmstead* court about the effects of needlessly relinquishing participation in community life apply here. Eating lunch with other students could be considered an integral part of the public school experience, one in which [the student] would be required to participate . . . .

*Id.* Surely, if evidence of unnecessarily isolating one child with disabilities during the lunch hour warrants jury consideration of potential discrimination in violation of Title II, evidence that the Board's decision would result in unnecessarily isolating hundreds of children with disabilities for the entire school year means that DRW has stated a claim upon which relief can be granted.

### C. The Board's decision to construct a new larger Lakeland school will result in increased unjustified social isolation of students with disabilities in Walworth County and thus violates the integration mandate and discriminates against students with disabilities in violation of Title II of the ADA.

According to the most recent data available from the Wisconsin Department of Public Instruction, Walworth County educates over 11% of its students with disabilities at Lakeland school, an environment in which they are completely segregated from non-disabled students. (First Amended Complaint at ¶ 8). In contrast, less than 1% of students with disabilities are educated in segregated schools across the state of Wisconsin. (First Amended Complaint at ¶ 11). The Walworth County Children with Disabilities Education Board (WCCDEB) has made it clear that a majority of Lakeland students do not have "significant needs." (First Amended Complaint at ¶ 10). These are all facts which the Court must assume are true in ruling on this Motion. Thus, no justification has

6

been provided for the wide discrepancy between the percentage of segregated students in Walworth County as compared with the percentage of segregated students all other Wisconsin counties.

The wide discrepancy in the percentage of students educated in a segregated school in Walworth County as compared to all other counties in Wisconsin without justification may alone constitute disability-based discrimination. Nevertheless, DRW did not file this case until the Board made the decision to fund the construction of a *larger* Lakeland school; a decision which will result in a significant increase in the number of potential students who can enroll at Lakeland school. (First Am. Compl., ¶ 12).

> D. **The decision to construct a new larger Lakeland school also discriminates against students with disabilities in Walworth County because of their disabilities in violation of Section 504 of the Rehabilitation Act.**

The Rehabilitation Act, which applies to all programs which receive federal aid, prohibits disability-based discrimination, and contains a regulation requiring programs and activities to be administered in "'the most integrated setting appropriate to the needs of qualified handicapped persons.'" *Radaszewski ex rel. Radaszewski v. Maram, supra*, at 607 (quoting 28 C.F.R. § 41.51(d)). In fact, the ADA's integration mandate is fashioned after the regulation implementing the Rehabilitation Act. *Id.* (citing *Olmstead,* 527 U.S. 581 at 592). Due to similarities between the two Acts, courts often apply the identical analysis to both. *Id.* (noting "[a]though our analysis shall focus on the ADA, that analysis applies with equal force to [the claimant's] Rehabilitation Act claim."); *see also Bruggeman v. Balgojevich,* 324 F.3d 906, 912 (7th Cir. 2003) (noting that regulations requiring an integrated setting are "materially identical" under the ADA and

the Rehabilitation Act); *Nelson v. Milwaukee County,* No. 04 C 0193, 2006 WL 290510, at *6 (E.D. Wis. Feb. 7, 2006). The Board's decision to fund the construction of a larger Lakeland school will result in more students with disabilities being educated in a setting which is not the most integrated setting appropriate to the needs of those students. Thus, the Board's decision constitutes disability-based discrimination in violation of Sec. 504 of the Rehabilitation Act.

### III.  Disability Rights Wisconsin has Standing Under Article III of the Constitution to Maintain this Suit.

The Board's first argument supporting its motion to dismiss under Rule 12(b)(6) is "DRW lacks standing to bring its claims in a representative capacity." (Mem. in Supp. of Def.'s Mot. to Dismiss, 1). Upon review of applicable case law, DRW clearly has standing to maintain this suit both on its own behalf and on behalf of all school-aged children in Walworth County.

Although the Board correctly identified the factors to be addressed when a party's standing is questioned, the Board's arguments that DRW has not established standing in this case are unconvincing. The basic question to be answered when standing is challenged is whether the plaintiff "is a proper party to request an adjudication of a particular issue" rather than "whether the issue itself is justiciable." *Flast v. Cohen*, 392 U.S. 83, 100-01 (1968). Plaintiff can establish Article III standing by alleging "(1) an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." *Or. Advocacy Ctr. v. Mink,* 322 F.3d 1101, 1108 (9th Cir. 2003) (citing *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.,* 571 U.S. 544, 551 (1996).

8

As described below, DRW has met all of these criteria and established standing to maintain this suit under Article III.

Furthermore, because Article III standing requirements require only general factual allegations at the pleading stage, the Board's motion to dismiss should be denied. The applicable standard in a challenge to a litigant's standing is not static. *Pa. Protection & Advocacy, Inc. v Houston,* 136 F.Supp. 2d 353, 360 (E.D. Pa. 2001). "At the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice . . . ." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). Thus, at this stage in the litigation, DRW does not need to set forth evidence to establish the three standing requirements, allegations that the three requirements for standing are sufficient.

In addition to meeting Article III requirements, prudential components of the standing doctrine require courts to apply self-imposed limits on jurisdiction. Prudential components generally prevent a plaintiff from raising another person's legal rights or filing a generalized grievance. *Id.* (citing *Allen v. Wright,* 468 U.S. 737, 751 (1984). An additional prudential component requires the complaint to fall within the law's protected zone of interest. *Id.* "Unlike the constitutional requirements, however, prudential limits on the exercise of federal jurisdiction may be abrogated by Congress." *Id.* (citing *United Food,* 517 U.S. at 551, 555-58). Courts have found that Congress abrogated prudential components of standing when a protection and advocacy agency such as DRW filed suit in a representational capacity to protect the rights of individuals with disabilities. *Id.* at 1116; *Tenn. Protection & Advocacy v. Bd. of Educ. Of Putnam County,* 24 F.Supp.2d 808, 814 (M.D. Tenn. 1998)("the general prohibition on a litigant's raising another person's legal rights does not apply to TPA. Most courts . . . have reached the same conclusion

without mentioning the words 'prudential standing'"). Similarly, to the extent that the Board attempts to argue prudential standing components prevent this court's exercise of jurisdiction should be considered unconvincing.

### A. As the designated protection and advocacy agency in the state of Wisconsin, Disability Rights Wisconsin has standing to sue on its own behalf.

The state of Wisconsin has appointed DRW as the designated protection and advocacy agency to advocate on for the rights of individuals with disabilities under Wisconsin Statutes Section 51.62. (First Am. Compl. ¶ 1). As such, DRW is empowered to "[p]ursue legal, administrative and other appropriate remedies to ensure the protection of the rights of persons with developmental disabilities or mental illness." Wis. Stat. § 51.62(3)(a)1. Thus, DRW is fulfilling its statutory obligation in filing this suit on behalf of students with disabilities in Walworth County to prevent disability-based discrimination against those students under the ADA and the Rehabilitation Act.

### 1. Disability Rights Wisconsin will suffer a direct injury by the Board's decision to fund the construction of a larger Lakeland school.

If a new, larger Lakeland school is built, DRW will suffer direct injury in addition to the injuries children with disabilities in Walworth County. DRW has alleged that the funding to build a new Lakeland school will divert funds from other special education services it provides in every school district in Walworth County. (First Am. Compl. ¶ 17). This diversion of funds will frustrate DRW's attempts to fulfill its statutory duty to advocate on behalf of all people with disabilities in the state of Wisconsin. This is because DRW will be forced to expend additional resources advocating on behalf of

10

students and parents in Walworth County who do not want their children to attend that school.

In addition, courts have made it clear that the requirement that a plaintiff allege an injury-in-fact is not a demanding one. *Family & Children's Ctr. Inc, v. Sch. City of Mishawaka,* 13 F.3d 1052, 1058 (7th Cir. 1994) (quoting *N. Shore Gas Co. v. EPA*, 930 F.2d 1239, 1242 (7th Cir. 1991)). Plaintiffs only need to allege a stake in the outcome that goes beyond "intellectual or academic curiosity." *S.E. Lake View Neighbors v. Dep't of Housing & Urban Dev.*, 685 F.2d 1027, 1033 (7th Cir. 1982) (citing *United States v. SCRAP,* 412 U.S. 669, 687-88 (1973) and *Sierra Club v. Morton,* 405 U.S. 727, (1972)). This is a standard DRW has met when it alleged that the construction of a new Lakeland school will result in a significant increase in the number of students with disabilities who can enroll at Lakeland. Increased enrollment at Lakeland in violation of the integration mandate under both the ADA and the Rehabilitation Act will in turn result in DRW expending increased resources to represent the increased number of children whose parents oppose such segregation.

**2. The Board is the proper defendant in this case.**

The Board next argues that DRW has brought suit against the wrong party. (Mem. in Supp. of Def.'s Mot. to Dismiss, 7). The Board's argument is based on a misguided interpretation of Wisconsin Law.

According to the Board, "the alleged injury is the result of actions of a third party (the WCCEB), not the actions of the Walworth County Board of Supervisors . . ." (*Id.*). It is true that to establish standing, there must be a causal connection between the plaintiff's injury and the defendant's conduct rather than result from "'the independent

action of some third party not before the court.'" *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (citing *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41-42 (1976)). However, actions taken by the WCCDEB are not independent actions of an independent third party because the WCCDEB is completely dependent on the Walworth County Board of Supervisors.

The county board of supervisors in any Wisconsin county such as Walworth County may create a "county children with disabilities education board." Wis. Stat. § 115.817. However, the county board of supervisors maintains control over the CCDEB after creating one. For example, the county board of supervisors determines how many members will serve on the CCDEB and elects or appoints those members. Wis. Stat. § 115.817(3)(a). In addition, a CCDEB has neither the power to erect buildings or create an annual budget without the approval of the county board of supervisors. Wis. Stat. § 115.817(5)(a). Finally, a CCDEB must defer to the county board of supervisor's decision regarding an integrated service program for children with severe disabilities. Wis. Stat. § 115.817(5)(c).

The decision to fund the construction of a new larger Lakeland school was entirely within the control of the Board. Indeed, it was a decision made by the defendant Board. (First Am. Complaint, ¶ 12). The Board is thus the proper defendant in this case.

### 3. A favorable decision in this case will prevent and thus redress the injury Disability Rights Wisconsin has identified.

A favorable decision in this case will enjoin the construction of a new larger Lakeland school. This will prevent funds from other special education services in the county being diverted to pay for the construction of the new school. This will additionally

12

prevent the increase in enrollment of students with disabilities in Walworth County at the segregated Lakeland school.

Again, at the pleading stage, general factual allegations of injury resulting from the defendant's conduct are sufficient to defeat a motion to dismiss. *Lujan,* 504 U.S. 555 at 561. In addition "to survive a motion to dismiss raising redressability, a plaintiff need only allege 'that there is a substantial likelihood that the relief requested will redress the injury claimed.'" *Nelson v. Milwaukee County,* 2006 WL 290510, at *4 (quoting *Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 75, n.20 (1978)).

### B. Disability Rights Wisconsin has also established associational standing to sue on behalf of all school-aged children with disabilities who reside in Walworth County.

Next, the Board argues DRW cannot show a causal connection between the construction of a new Lakeland school and the alleged injury to students because enjoining construction will not prevent children from attending Lakeland and the Board does not have discretion over whether students are placed at Lakeland school. (Mem. in Supp. of Def.'s Mot. to Dismiss, 8).

Since DRW can meet the required tests for associational standing in this case, it should be allowed to maintain this suit on behalf of children with disabilities in Walworth County. The Supreme Court has defined a three-part test for establishing associational standing. *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333 (1977). Under *Hunt,* an association has standing to bring suit on behalf of its members when: (1) its members would have standing to sue on their own, (2) the interests the statute seeks to protect coincide with the organization's purpose, and (3) neither the claim nor the relief require

13

participation of individuals. *Id.* at 343. In addition, an organization can establish associational standing without naming the individuals on whose behalf the suit is brought. *Doe v. Stincer,* 175 F.3d 879, 882 (11th Cir. 1999). Furthermore, because *Hunt's* third requirement is prudential rather than constitutional in nature, it can be abrogated by Congress. *United Food,* 571 U.S. 544 at 557; *Or. Advocacy Ctr.,* 322 F.3d 1101 at 1113.

### 1. DRW can meet the required tests to establish associational standing.

DRW can meet the first two requirements under *Hunt,* and the third requirement has been waived when Congress specifically conferred standing on organizations such as DRW to litigate on behalf of people with disabilities. Students with disabilities in Walworth county would have standing to bring suit against the Board under the same ADA theory upon which the Supreme Court premised its decision in *Olmstead*.

Furthermore, courts have made it clear that "associational standing" can derive from a Congressional grant or judicial discretion. *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343-44 (1977) (conferring associational standing in the absence of a statute providing for standing). Thus, even if this court finds Congress has not expressly authorized DRW to bring suit in a representational capacity under these circumstances, the court should nonetheless confer associational standing due to the importance which the Supreme Court expressed about reducing the segregation of people with disabilities in its decision in *Olmstead*, pursuant to the ADA.

### 2. Since Disability Rights Wisconsin is the designated protection and advocacy agency in the state of Wisconsin, students with disabilities are constituents of DRW.

Despite the fact that students with disabilities in Walworth County are not members of DRW in the traditional sense, those students should be considered DRW's

constituents for the purpose of associational standing.  In *Oregon Advocacy Center*, the Eleventh Circuit spoke directly on this point and recognized that constituents of the protection and advocacy organization in that case were the "functional equivalent of members for purposes of associational standing" because of the protection and advocacy organization's statutory mission.  322 F.2d 1101 at 1110.  The court based this conclusion on the facts that the protections and advocacy organization served a specialized segment of the population (people with disabilities) who had a personal stake in the outcome.  *Id.* at 1111.  In addition, that court found it significant that the governing board and advisory council of the organization were composed of members who represent the needs of clients served by the protection and advocacy organization.  *Id.* at 1111-1112.  Similarly, in this case, students with disabilities in Walworth County are one group of individuals served by DRW.  Those students have a personal stake in the outcome of this case.  Furthermore, federal law requires that DRW's governing board and advisory council be composed of members with disabilities.  *See, e.g.,* 42 U.S.C. § 10805; 42 C.F.R. §§ 51.22 and 51.33.

> **III.** **The Board's Argument that this Suit should be Dismissed because Disability Rights Wisconsin has not met the Requirements under Rule 23 is Completely without Merit because DRW has Shown no Indication that it Attempted to Bring a Class Action Suit.**

The Board's second argument supporting its motion to dismiss is "DRW has failed to establish that it is appropriate to treat its claims as class action claims under Rule 23 of the Federal Rules of Civil Procedure" (Mem. in Supp. of Def.'s Mot. to Dismiss, 1). The Board provides an accurate list of the four requirements for class certification under Rule 23 (*Id.* at 10-11).  However, it is clear from the face of the complaint that DRW did not attempt to bring a class action suit and thus is not required to meet the four

15

prerequisites justifying a suit under that rule. Instead, DRW has asserted its statutory authority as the designated protection and advocacy agency in the state of Wisconsin. (First Am. Compl., ¶ 1). As previously stated, the protection and advocacy authority allows DRW to bring this suit on its own behalf and in a representative capacity on behalf of students with disabilities in Walworth County.

Since bringing suit in a representative capacity is not equivalent to filing a class action suit, this court should afford the Board's second argument no weight in ruling on this motion. The Supreme Court has made it clear that there are

> special features distinguishing suits by associations on behalf of their members from class actions. While a class action creates an ad hoc union of injured plaintiffs who may be linked only by their common claims, an association suing to vindicate the interests of its members can draw upon a pre-existing reservoir or expertise and capital.

*United Auto Workers v. Brock,* 477 U.S. 274, 289 (1986). The Board has failed to cite any case or advance any argument justifying its assertion that DRW has implied it "seeks to be named the representative of a class of individuals on shoes behalf the suit was instituted." (Mem. in Supp. of Def.'s Mot. to Dismiss, 10).[2] The Board simply ignores an abundance of case law allowing plaintiffs to proceed in a federal case by establishing standing in a representative capacity without meeting the prerequisites for a class action suit under Rule 23. *See e.g. Nat'l Motor Freight Ass'n v. U.S.,* 372 U.S. 246 (1963); *Warth v. Seldin,* 422 U.S. 490 (1975); *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333 (1977); *Food*

---

2 As this court knows, attorneys are prevented by the Federal Rules of Civil Procedure from presenting a pleading, motion or other paper to the court that are unwarranted "by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ. P. 11(b)(2). Furthermore, a court is authorized, *sua sponte,* to impose sanctions on an attorney who after reasonable inquiry signs a paper that he or she knows not to be warranted by existing law or a good faith argument for modification in existing law. *Burda v. M. Ecker Co.,* 2 F.3d 769, 773 (7th Cir. 1993).

*and Commercial Workers v. Brown Group, Inc.,* 517 U.S. 544 (1996); *Or. Advocacy Ctr. v. Mink,* 322 F.3d 1101 (9th Cir. 2003).

> IV. **Exhaustion of administrative remedies under the Individuals with Education Act is not required when, as in this case, resort to administrative remedies would be futile.**

Finally, the Board argues that its motion to dismiss under Rule 12(b)(6) should be granted because DRW has failed to exhaust its administrative remedies as required by the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(f), (g) ("IDEA"). (Mem. in Supp. of Def.'s Mot. to Dismiss, 1). While it is ordinarily true that a party must exhaust administrative remedies under IDEA before filing suit under the ADA and § 504 of the Rehabilitation Act, this rule does not apply in a case in which resort to administrative remedies would be futile. *Honig v. Doe,* 484 U.S. 305, 327 (1988); *McCormick v. Waukegan Sch. Dist.,* 374 F.3d 564, 568 (7th Cir. 2004). Courts have determined administrative remedies to be futile in three types of cases: those in which the plaintiff alleges a pure issue of law rather than fact; those in which the remedy the plaintiff seeks cannot be granted under the administrative process; and those in which the administrative process is substantively inadequate. *Smith v. Indianapolis Pub. Sch.,* 916 F.Supp. 872, 877 (S.D. Ind. 1995).

> A. **Administrative remedies under the Individuals with Education Act are futile and do not apply to DRW because that Act affords DRW no procedural protection.**

The Board premises its exhaustion argument under the supposition that, "if the relief sought by DRW is available under the IDEA, then the alleged ADA and §504 violations cannot proceed until the IDEA'S due process proceedings under 20 USC

§1415(f) and (g) have been exhausted." (Board br., p. 13). There are multiple flaws with this supposition.

The first flaw with the Board's exhaustion argument is that DRW has no standing to pursue administrative remedies under the IDEA. Moreover, the Board is not an entity regarding whom parents can pursue IDEA administrative remedies. See 20 USC §1415(f)(1)(A). Such remedies are only afforded to (and against) parents and local education agencies (LEAs). DRW is not a parent of a child with special education needs. The defendant Board is not an LEA.

The second flaw in the Board's exhaustion argument is that apparently the Board has completely misconstrued the claims and relief that DRW is seeking. DRW is seeking to prevent the Board from implementing a systemic decision to build a new segregated school which would exacerbate the already exorbitant rate of segregation that exists in Walworth County. The Board does not cite a single case which even remotely suggests that an individual parent could stop the construction of the new Lakeland school by bringing a due process hearing against one of the 15 school districts within Walworth County. It does not cite such a case because none exists.

It is important for the court to recognize what the Board fails to acknowledge in order trying to dismiss DRW's claims. Nothing in DRW's First Amended Complaint seeks to halt any placements of children at the current Lakeland School. Nor does anything in DRW's First Amended Complaint seek to close the current Lakeland School.

If the Board had taken the time to read the First Amended Complaint, rather than try to twist it into something it is not, it would recognize that the relief DRW is seeking would be futile to obtain under the IDEA. This is true not only because neither DRW nor

18
Case 2:06-cv-00813-RTR    Filed 09/14/06    Page 18 of 20    Document 12

the Board is an appropriate party for IDEA administrative remedies, but the relief which DRW is seeking is simply unavailable under the IDEA.

The Seventh Circuit recently reaffirmed the concept that when the relief which a plaintiff is seeking is unavailable under the IDEA, exhaustion of administrative remedies is not required. *McCormick*, at 569. Other Circuits have held similarly. *See, New Mexico Ass'n for Retarded Citizens v. New Mexico*, 678 F. 2d 847, 851 (10th Cir. 1982) (holding that when the gravamen of the suit was that the state's entire special education system was infirm, the remedies available at the administrative level did not include restructuring the system to comply with the IDEA, and therefore exhaustion was futile and unnecessary); and *Heldman v. Sobol*, 962 F. 2d 148, 159 (2d Cir. 1992) and *Mrs. W. v. Tirozzi*, 832 F. 2d 748, 756-57 (2d Cir. 1987) (both cases dealing with systemic deficiencies in the administrative hearing process which a due process hearing officer lacked the power to remedy). Thus, where, as here, the relief sought is systemic and unavailable under the IDEA's administrative hearing process, exhaustion of such a process is futile, and therefore unnecessary.

> **B. Disability Rights Wisconsin can maintain this antidiscrimination suit under the Americans with Disabilities Act and Sec. 504 of the Rehabilitation Act, which is not the purpose of the IDEA.**

Since DRW's First Amended Complaint clearly sets forth discrimination claims under the ADA and Sec. 504 of the Rehabilitation Act, it is noteworthy that a number of courts have concluded that the "IDEA is not an antidiscrimination law." *S.V. v. Sherwood School Dist.*, 75 F. Supp. 2d 1153, 1157 (D. Oregon, 1999), *citing, Olmstead,* 119 S. Ct. at 2198, n. 8. Indeed, the 8th Circuit has specifically found that the IDEA was

not passed by Congress to remedy disparate treatment under the 14th Amendment. *Bradley v. Arkansas Dept. of Ed.*, 189 F. 3d 745, 752 (8th Cir. 1999).[3]

Thus, since the IDEA is not an anti-discrimination statute, it is Sec. 504 which, "instead prohibits discrimination against disabled individuals." *Sellers v. School Bd. of the City of Manassas*, 141 F. 3d 524, 528 (4th Cir. 1998). *Sellers* goes on to state that, "plaintiffs must prove that they have either been 'subjected to discrimination' or excluded from a program or denied benefits 'solely by reason of' their disability." *Id.* These are exactly the claims which DRW is making here.

Accordingly, this court should not allow the defendant to twist this action into something which it is not, in order to free itself of a valid discrimination lawsuit. As such, the court should deny the defendant's Motion to Dismiss.

## CONCLUSION

For the above stated reasons, all arguments advanced by defendant in this case fail under review and the Board's motion to dismiss under Rule 12(b)(6) should be denied.

Dated this _____ day September, 2006.

/s/_____
Jeffrey Spitzer-Resnick
Attorney for Plaintiff
Disability Rights Wisconsin
131 West Wilson Street Suite 700
Madison, WI 53703
(608) 267-0214

---

[3] The 8th Circuit reversed *Bradley's* holding, in part, *en banc,* that the 11th Amendment prevented plaintiffs from proceeding against the State on their ADA and Sec. 504 claims. *J.C. v. United States*, 235 F. 3d 1079, 1080 (8th Cir. 2000).